UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES A. MURRY, SR.                      PLAINTIFF

v.                CIVIL ACTION NO. 3:12CV-56-S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security        DEFENDANT

**MEMORANDUM OPINION**

       The plaintiff, James A. Murry, Sr., filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security denying his application for disability insurance and supplemental security income benefits. This matter is presently before the court for consideration of the objections of the Commissioner to the United States Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation on this appeal.[1] In a lengthy report,[2] the magistrate judge concluded that:

       (1) The administrative law judge ("ALJ") failed to adequately articulate how he weighed and evaluated the medical opinions and objective medical evidence concerning Murry's claimed mental impairment at step three of the evaluation process; and

       (2) The ALJ did not adequately explain his step four determination of Murry's residual functional capacity ("RFC"), nor did he refer to and supplement any of his step two or three findings to support the RFC determination.

---

[1] The motion for extension of time within which to file objections to the magistrate judge's report (DN 19) will be granted by separate order.

[2] Findings of Fact, Conclusions of Law, and Recommendation, DN 18. Also referred to herein as the "magistrate judge's report and recommendation" or "R & R."

The magistrate judge recommended that the matter be remanded to the Commissioner of Social Security for further consideration. After conducting a de novo review of the record and those portions of the magistrate judge's report to which the Commissioner objects, we find that we are in agreement with the magistrate judge's findings and recommendation.

Murry was forty-three years old on the alleged onset date of his disability in 2007. Murry was involved in a motor vehicle accident approximately ten months prior to the alleged onset date. After his initial claim for disability benefits was denied, he appealed the decision. He gave testimony at a hearing before an ALJ. A vocational expert and Murry's wife also testified. The ALJ concluded that Murry retained the RFC to perform sedentary work with certain restrictions and thus was not disabled. (AR[3] 23; 25).

In reaching this conclusion, the ALJ completed the five-step evaluation process required by the Code of Federal Regulations ("CFR"). As explained by the ALJ:

> Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will go on to the next step.
>
> At step one, the undersigned [ALJ] must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and

---

[3]"AR" refers to the Administrative Record.

regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individuals ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909) the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

> At the last step of the sequential evaluation process (29 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (29 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

AR 18-19.

The ALJ determined that Murry had not been engaged in substantial gainful activity since the alleged onset date, and that he had degenerative disc disease of the lumbar spine with radiculopathy, degenerative disc disease of the cervical spine, sleep apnea, obesity, and depression. AR 19.

The ALJ found these impairments to be "severe," as defined by the regulations (20 CFR 404.1520(c) and 416.920(c). He went on to further consider the claim, finding at step three of the evaluation that Murry's impairments or combination of impairments did not meet or medically equal the criteria of a Listed Impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). After concluding that Murry's physical impairments, separately and in combined effect, did not meet or medically equal a Listed Impairment, the ALJ addressed Murry's mental impairment in light of the paragraph B criteria of listing 12.04. He found that Murry's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, and therefore concluded that the "paragraph B" criteria were not satisfied.

The ALJ next made the following determination regarding Murry's RFC:

>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he needs a sit/stand option with at least 30 minutes in a position. He can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolding. He cannot crawl or kneel. He can balance, stoop, and crouch occasionally. He should avoid hazards such as machinery and heights. He cannot reach overhead or push/pull with the lower extremities. He is limited to the performance of simple, repetitive tasks, only occasional contact with co-workers and supervisors and no contact with the public.

AR 23.

>The ALJ noted that

>In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence , based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

>In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms.

AR 23-24.

>The ALJ recited in the remaining two paragraphs of his RFC evaluation:

>The undersigned notes that the claimant has an excellent work history. His testimony regarding his abilities to stand, walk and sit are accepted. He said he could sit for three to four hours in an eight-hour workday. He could stand three hours in an eight-hour workday. The claimant testified he could lift at least ten pounds. He said that a heating pad helps alleviate his neck pain. He alleged that he had pain all the time and that it was between six and seven out of ten. The undersigned finds the claimant's pain does interfere with his concentration, but dies not preclude him from being able to do sedentary work.

>After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity,

> persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 24.

The immediately preceding two paragraphs constitute the entire explanatory portion of the RFC evaluation by the ALJ. The magistrate judge found, and this court agrees, that the evaluation was deficient, as the ALJ did not discuss Murry's sleep apnea, his mental health, or any limitations that might be caused by either impairment. The magistrate judge noted that:

> The ALJ thus cited to no treatment notes, test results, or any medical or psychological opinions regarding, or evaluations of, Mr. Murry's functional limitations. Nor, however, did he refer to and supplement as needed any of his commentary with respect to steps two (determination of the severity of Mr. Murry's problems) or step three (evaluation of whether Mr. Murry's impairments met or equaled a Listed Impairment).

R & R, p. 9.

The Commissioner urges the court to reject the magistrate judge's report and affirm the agency's decision on the ground that, viewing the ALJ's report as a whole, the findings at each step adequately addressed Murry's impairments and are sufficient to affirm the denial of benefits decision.

The magistrate judge observed that Murry asserted several "discrete errors" in the ALJ's decision, and that all of the allegations shared a common claim that the ALJ failed to adequately explain his reasons for setting specific limitations in Murry's residual functional capacity. R & R, p. 9. The magistrate judge then quoted Social Security Ruling 96-8p which states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)...The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (S.S.A.), 1996 WL 374184, *7. The magistrate judge noted that "[t]he ALJ discussed no opinion evidence and cited to no objective evidence, and made no attempt to explain how any material inconsistencies or ambiguities in the record were considered and resolved." R & R, p. 11.

In her objections to the magistrate judge's report, the Commissioner makes a number of points which we will address *seriatim*.

First, the Commissioner urges that the magistrate judge erred in stating that RFC assessments should be evaluated for their sufficiency in isolation from the other steps in the evaluation. The magistrate judge did not state such a proposition. Rather, he properly recognized that the ALJ must consider the record as a whole in reaching his decision.

At pages 12 through 15, the magistrate judge explained that the step four finding alone does not contain sufficient analysis, in this instance, to meet the SSR 96-8p requirements. He went on to state, however, that the narrative analysis in other findings may be used to support the narrative requirements applicable to an RFC finding. He discussed at pages 13 through 15 why he concluded that the other narrative sections were insufficient to render the RFC finding satisfactory under the regulation. The magistrate judge noted that the ALJ failed to reference any earlier findings or indicate that they were applicable to the RFC analysis. R & R, p. 13. In determining that Murray could perform sedentary work with specific physical and mental health limitations, the ALJ discussed only Murry's testimony concerning his daily activities and pain level, and perceived physical limitations. R & R, p. 10; AR, p. 24. While the court must view the ALJ's decision as a whole and may look to other portions of the record to determine whether the decision is supported by substantial evidence, where the court cannot discern the basis for the decision at any step of the evaluation, the matter must be remanded for further consideration by the agency. *See Clifton v.*

*Chater*, 79 F.3d 1007 (10th Cir. 1996)(remand for insufficient step three analysis) where the court noted:

> In the absence of ALJ's findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standard to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. [citation omitted]. Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significant probative evidence he rejects. [citation omitted].

*Clifton*, 79 F3d. at 1009-10.

In this instance, the ALJ stated that Murry's testimony regarding his abilities to sit, stand, and walk were accepted. Murry testified that he said that he could sit for three to four hours in an eight-hour workday, stand three hours in an eight-hour workday, and lift at least ten pounds. He stated that a heating pad alleviated his neck pain, and that he was in pain all the time at a level of "six or seven out of ten." AR 24.

The ALJ concluded, without explanation, that Murry's pain interfered with his concentration, but did not preclude him from being able to do sedentary work. He concluded that Murry could perform sedentary work with a sit/stand option with at least 30 minutes in a position and that he could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolding. He could not crawl or kneel, He could balance, stoop, and crouch occasionally. He should avoid hazards such as machinery and heights. He could not reach overhead or push/pull with the lower extremities. AR 25. The magistrate judge found that the ALJ's earlier findings concerning the nature and extent of his back impairment were sufficient to conclude that the record as a whole provided substantial evidence to support the suggested limitations. R & R, p. 14.

The magistrate judge observed that nowhere in the RFC findings was there any reference to Murry's sleep apnea, an impairment which the ALJ found at step two to be "severe." The magistrate judge also noted that, to the extent that the step two and three findings could "implicitly be used to support a[n RFC] determination..." R & R, p. 13), those findings lacked sufficient explanation to alleviate the deficiency at step four.

By way of example, the magistrate judge noted that ,at step two, the ALJ chose to credit one non-treating consultant's opinion over another non-treating consultant's opinion concerning Murry's mental impairment without any discussion of objective facts or a rationale for this choice. The Commissioner suggests that any further explanation was not required because the ALJ was not discrediting the opinion of a treating physician. However, the failure to articulate any basis whatsoever for the determination renders the finding wholly unreviewable and thus insufficient. Additionally, the magistrate judge noted that Murry had been hospitalized for psychiatric issues at a time after the non-treating, record-reviewing psychologist had prepared her opinion. Thus this consultant did not have all of the objective medical evidence before her. This additional objective evidence and its impact, if any, remained unaddressed in the RFC evaluation.

The magistrate judge found that the ALJ's failure to sufficiently address Murry's sleep apnea, mental impairment,  and other objective medical evidence in the record, and to clearly reconcile the opinions of the consultants rendered the ALJ's evaluation incomplete.

The court agrees with the magistrate judge that the RFC finding is simply too spare to enable adequate review of the decision. As the ALJ did not reference any other findings nor provide sufficient explanation of his decision in satisfaction of SSR 96-8p, the matter must be remanded to

the agency for further consideration. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

May 14, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**